UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:  Ricardo Pedro Martinez and
        Donila Maria Martinez,                    No. 7-08-12434 JS

                Debtors.

Los Alamos National Bank,

                Plaintiff,                        Adv. No. 08-1143 J
v.

Ricardo P. Martinez,

                Defendant.

MEMORANDUM OPINION

This matter is before the Court on Defendant's Second Motion for Summary Judgment ("Motion")(Docket No. 29) filed on February 1, 2010. Plaintiff filed Los Alamos National Bank's Response in Opposition to Defendant's Second Motion for Summary Judgment (Docket No. 31) on March 6, 2010. The Court held oral argument on the Motion on April 29, 2010. Plaintiff, Los Alamos National Bank appeared by and through counsel, Jurgens & With, P.A. (James R. Jurgens) and Defendant, Ricardo P. Martinez, appeared by and through counsel, William F. Davis & Assoc., P.C. (William F. Davis and Anne D. Goodman). The Court took the matter under advisement.

This adversary proceeding arises from Los Alamos National Bank's ("LANB's") lending relationship with Technical Design, Inc. and Defendant Ricardo P. Martinez, wherein certain extensions of credit were granted based on accounts receivable certificates. LANB's Complaint seeks a determination that the debt incurred by these extensions of credit, guaranteed by Defendant, was obtained by fraud and is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (B). Defendant seeks summary judgment on Count I of LANB's Complaint

objecting to dischargeablity under 11 U.S.C. §523(a)(2)(A). Defendant asserts he is entitled to summary judgment on Count I because (1) proceeds of loans made by LANB, secured by junior mortgages against the Defendant's and his son's homes (defined below as the First Mortgage Loans), were used to pay the entire portion of the debt owing under the line of credit note (defined below as the Old Note) upon which LANB's fraud claims are based, and therefore none of the indebtedness now owing under Loan No. 621498-70 (defined below as the New Note) that paid off the remaining balance of the Old Note "is, or ever was, tainted by fraud;"[1] (2) in any event, no debt owing under the New Note can be tainted by fraud because the New Note constituted a novation that extinguished the debt under the Old Note; and (3) the debt under the First Mortgage Loans has been paid in full and extinguished by subsequent loans made by LANB secured by newly granted junior mortgages against the Defendant's and his son's homes (defined below as the Second Mortgage Loans).

The Court having heard the arguments of counsel, and having reviewed the Defendant's Second Motion for Summary Judgment and the papers filed in support of and in opposition to the Motion and having considered applicable law, finds that the Defendant's Second Motion for Summary Judgment should be denied.

## **MATERIAL FACTS FOR WHICH NO GENUINE ISSUE EXISTS**

No genuine issue of material fact exists with respect to the following:

1. Defendant, Ricardo Pedro Martinez (Mr. Martinez), was the President and Chief Executive Officer of Technical Design, Inc. *LANB's Response in Opposition to Defendant's Second Motion for Summary Judgment ("LANB Response"), Ex.1 p.25, ln 10-13*.

2. Technical Design, Inc. ("TDI") is a New Mexico corporation. *Id.*

---

[1] Defendant's Second Motion for Summary Judgment (Docket No.31) at p. 2.

3. Mr. Martinez was responsible for day to day operations of TDI and the supervision of all of its employees. *Id. at p.25, ln4; p.28, lns.11-24*.

4. Ricardo K. Martinez, Defendant's son ("Son") was employed by TDI from and after 1995. *Id. at p.38, lns16-22*.

5. Los Alamos National Bank ("LANB") had a credit relationship with TDI wherein LANB and TDI entered into various commercial promissory notes. *Affidavit of Syndi Schlindwein at ¶¶2,8* (Docket No. 31, Ex. 2) ;*Deposition of Ricardo Martinez dated June 16, 2009 ("Martinez Depo.") p.36-38, 40, 42-43, Exhibit 2, 3, and 6*.(Docket No.29, Ex 29-1)

6. On or about March 15, 2002 TDI executed a promissory note in favor of LANB to establish a line of credit in the amount of $1,000,000 (the "Line of Credit Note"), which note evidences a loan designated as Loan #885096-78. *Martinez Depo. p.36, Exhibit 3*.

7. By allonge, the due date of the Line of Credit Note was extended from March 15, 2003 to March 13, 2004. *Martinez Depo. p.37, Exhibit 3*.

8. In March 2004, TDI sought to renew and extend the line of credit evidenced by the Line of Credit Note. *Martinez Depo. pp. 41-42*.

9. On March 1, 2004, Mr. Martinez executed a Power of Attorney appointing his Son as his attorney-in-fact and allowing his Son to act on his behalf in connection with any and all matters relating to the business of TDI. *See LANB Response, Ex. 2*.

10. On March 3, 2004, TDI, by Son, as attorney-in-fact, executed a Commercial Loan Agreement and Promissory Note in favor of LANB, which note evidences a loan designated as Loan # 885096-79 (the "Old Note"). *Martinez Depo. Exhibits 5 and 6*.

11. On March 3, 2004, Son, as attorney-in-fact for "Ricardo P. Martinez, President/CEO," executed a Guaranty in favor of LANB by "Ricardo P. Martinez" as Guarantor. *Complaint at ¶13; Answer ¶13; Martinez Depo. Exhibit 6.*

12. The Commercial Loan Agreement for the Old Note provided for a Line of Credit that allowed TDI to borrow up to the lesser of $1,000,000 or a "Borrowing Base" of 80% of TDI's billed and unbilled accounts and contract receivables that were aged 60 days or less and supported by monthly aging reports. *Martinez Depo. Exhibit 6.*

13. TDI submitted monthly Loan Advance/Pay Down Certificates with an attached account receivable aging report detail ("Certificates") in order to comply with the borrowing base requirements of the Commercial Loan Agreement for the Old Note. *Martinez Depo. Exhibit 6; Affidavit of Syndi Schlindwei, para 12* (Docket No. 31, Ex. 2).

14. If an over-advance occurred under the Old Note, TDI was required to repay the over-advance in addition to any regularly scheduled payments. *Martinez Depo. at Exhibit 6.*

15. The Old Note was designated as a "Revolving Draw" note and provides for an initial advance of $827,714.88 plus other advances subject to conditions of the loan, with an initial interest rate of 6%. *Martinez Depo. at Exhibit 5, para 3,4.*

16. The Old Note provided that it was payable on demand, or, if no demand is made, interest only was payable monthly with a final payment of principal and interest on the stated maturity date of March 3, 2005. *Martinez Depo. at Exhibit 5, para 7.*

17. The Old Note refinanced the balance left owing on the Line of Credit Note. *Martinez Depo. at Exhibit 5 para 2.*

18. The last advance under the Old Note was made on October 15, 2005. *Martinez Depo. at page 49 lns 19-25.*

19. In August 2006 Arlene Rivera, TDI's bookkeeper, met with Syndi Schlindwein, a commercial loan officer at LANB, and notified her that the borrowing base Certificates, presented to LANB to obtain advances under the Old Note, contained account receivables that had already been collected. *Deposition of Arlene Rivera, p. 29, ln. 12; p.30 lns. 1-10.* (Docket No. 29, Ex.29-4)

20. LANB researched TDI's accounts receivable information provided in the Certificates for Certificates submitted between March 2004 and July 2006 and discovered that the net eligible accounts receivable contained in the Certificates included previously collected receivables. *Schlindwein Aff. ¶¶15-16.*

21. LANB compared the accounts receivable information in the Certificates for March 2004 through July 2006 against TDI's deposit accounts. *Schlindwein Aff. at ¶20.*

22. In August 2006 LANB contacted and then met with Mr. Martinez and Son to discuss how TDI would pay the Old Note. *Schlindwein Aff. at ¶22.*

23. The Old Note had been over advanced by approximately $415,000.00 as a result of the collected receivables having been reported in the Certificates as eligible receivables. *Schlindwein Aff. at ¶ 21.*

24. On or about August 16, 2006 LANB made a loan to Mr. Martinez and his spouse in the principal amount of $220,000 secured by a junior mortgage on their property located at 1355 Barranca De Oro, Santa Fe, New Mexico (the "Barranca de Oro property"), which loan was designated as Loan No. 475793-70 (the "First Barranca de Oro Mortgage Loan"). *Schlindwein Aff. at ¶¶26-28; Defendant's Exhibit 29-2 at 19.*

25. On or about August 16, 2006 LANB made a loan to Son and his spouse in the principal amount of $195,503.92 secured by a junior mortgage on their property located at 7527

-5-

Case 08-01143-j    Doc 37    Filed 07/30/10    Entered 07/30/10 16:22:34 Page 5 of 19

Snow Blossom Road, Santa Fe, New Mexico ("the Snow Blossom property"), which loan was designated as Loan No. 475793-71 (the "First Snow Blossom Mortgage Loan"). *Schlindwein Aff. at ¶¶26-28; Defendant's Exhibit 29-2 at 19.*

26. The principal amounts borrowed by Mr. Martinez and Son under the First Barranca de Oro Mortgage Loan and First Snow Blossom Mortgage Loan were applied to the Old Note, thereby reducing the principal balance of the Old Note by $415,503.92, leaving a principal balance of $552,589.02 owing under the Old Note. *Schlindwein Aff. at ¶29.*

27. On February 2, 2007 Mr. Martinez and his wife borrowed $679,250.00 from LANB to refinance the Barranca de Oro property, which was their home, and executed a promissory note in favor of LANB in the amount of $679,250.00, which loan was designated as Loan No. 689882-60 (the "Second Barranca de Oro Mortgage Loan"). *Martinez Aff.¶¶ 3,4.*

28. The proceeds of the Second Barranca de Oro Mortgage Loan were applied to the First Barranca de Oro Mortgage Loan, leaving a balance owing on that loan of zero; the remainder of the proceeds of the Second Barranca de Oro Mortgage Loan were used to pay down the First Snow Blossom Mortgage Loan and to pay other loans. *Defendant's Ex. 29-5, p.6*

29. On that same date, Son and his wife borrowed $299,250.00 from LANB to refinance the Snow Blossom property, which was their home, and executed a promissory note in favor of LANB in that amount, which loan was designated as Loan No. 689882-62. (the "Second Snow Blossom Mortgage Loan"). *Martinez Aff.¶5.*

30. The proceeds of the Second Snow Blossom Mortgage Loan were applied to pay down the First Snow Blossom Mortgage Loan and to other loans. *Defendant's Ex. 29-6, p.10*

31. A portion of the proceeds of the Second Barranca de Oro Mortgage Loan and the proceeds of the Second Snow Blossom Mortgage Loan were applied to the First Snow Blossom

-6-

Mortgage Loan to pay off the balance owing on the First Snow Blossom Mortgage Loan. *See Defendant's Exhibits 29-5, p. 6 and 29-6, p.10.*

32. On March 14, 2007 LANB, TDI, and Mr. Martinez and his wife entered into a Loan Workout Agreement and Release (the "Workout Agreement"). *Martinez depo. p.87, lns 5-10.*

33. On March 30, 2007 TDI executed a Promissory Note No. 621498-70 (the "New Note") in the principal amount of $705,356.68 bearing interest at a variable rate (the initial rate was 9.75% per annum) subject to the terms of the Workout Agreement and by its terms payable on demand or, if no demand was made, in 84 monthly payments of $9,639.28 each, with the final payment due on the stated maturity date of March 30, 2014. *Defendant's Exhibit 29-3 at p. 21, of Dan Castille at ¶¶9,10.*

34. On March 30, 2007, Mr. Martinez executed a Guaranty in favor of LANB, which provided that he guaranteed payment of each and every debt owed to LANB by TDI, now or at any time in the future, including the New Note. *Defendant's Ex. 29-3,pp. 25-34.*

35. Of the proceeds of the loan evidenced by the New Note, $503,299.45 was applied to the Old Note, resulting in a zero balance on the Old Note. The balance of the proceeds from the New Note was applied to other loans. *Defendant's Ex. 29-3, p.24.* There is no claim that any of those other loans were procured or tainted by fraud.

36. The Old Note is stamped "Paid off by Renewal, 4/2/07." *Defendant's Exhibit 29-4, p.22.*

37. On March 30, 2007 TDI executed a Disbursement Authorization related to the New Note. *Defendant's Exhibit 29-3, p. 23.*

-7-

38. The Disbursement Authorization called for a "Loan Payment/payoff" to the Old Note in the amount of $503,299.45. *Id. at p.24.*

39. LANB credited $503,299.45 to the Old Note on March 30, 2007. *Id.*

40. LANB's Item History Report for the Old Note provides that the Old Note was Paid off by Renewal. *Defendant's Exhibit 29-2 p.20.*

41. In September 2007, the Barranca de Oro property sold and from the sale proceeds LANB was paid $602,121.74 on the Second Barranca de Oro Mortgage Loan, s*ee Plaintiff's Ex. 2 at* ¶35, leaving an unpaid balance on that loan as of February 2009 in the amount of $84,909.62. *Id.*

42. As of February 2009, the Second Snow Blossom Mortgage Loan remained unpaid; there is a principal balance owing under the Second Snow Blossom Mortgage Loan in the amount of $70,687.20. *See Plaintiff's Ex. 2 at ¶36*

43. TDI made timely payments under the New Note in the amount of $9,639.28 per month, consisting of payments twice monthly in the amount of $4,819.64 each, from April 12, 2007 to July 31, 2007. *Martinez depo. P.94, lns.5-9; Exhibit.*

44. LANB received and applied installment payments totaling $165,232.41 to the New Note. *Martinez Depo. Exhibit 24, pp.1-2.*

45. As of February 28, 2009, LANB's statement for the New Note reflects an unpaid principal balance of $609,032.28. *Defendants Exhibit 29-3, p.34.*

46. On July 29, 2008, Ricardo Pedro Martinez and Donila Maria Martinez filed their voluntary petition under Chapter 7 of the Bankruptcy Code, No. 7-08-12434 JS.

47. On December 2, 2008, LANB commenced this adversary proceeding.[2]

---

[2] In this Opinion the Court defines Loan Nos. 475793-70 and 475793-91 as the First Barranca De Oro Mortgage Loan and the First Snow Blossom Mortgage Loan, respectively. These loans are junior mortgages that were entered

## CONTESTED FACTS

Material facts as to which a genuine issue exists include:

48.     Whether and to what extent the extensions of credit obtained by TDI under the Old Note were not paid down by the maturity date of the loan because of the inaccurate Certificates.

49.     Whether and to what extent any amounts due and owing under the New Note, which renewed and refinanced the balance due under the Old Note in the amount of $503,299.79, are attributable to the inaccurate Certificates.

50.     Whether the unpaid balance of the Second Barranca de Oro Mortgage Loan in the amount of $84,909.00 is attributable to inaccurate Certificates.

51.     Whether the unpaid balance of the Second Snow Blossom Mortgage Loan in the amount of $70,687.00 is attributable to inaccurate Certificates.

## SUMMARY JUDGMENT STANDARD

It is appropriate for the Court to grant summary judgment if the pleadings, discovery materials, and any affidavits before the Court show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c) made applicable to the adversary proceeding by Fed. R. Bankr.P. 7056. "[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and . . . [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Courts must

---

into by Defendant and his Son to secure what is referred to in Defendant's Second Motion for Summary Judgment as the "Excess Lending Notes." The First Barranca De Oro Mortgage Loan and the First Snow Blossom Mortgage Loan together are called the "First Mortgage Loans." The Second Barranca De Oro Mortgage Loan and the Second Snow Blossom Mortgage Loan together are called the "Second Mortgage Loans."

review the evidentiary materials submitted in support of a motion for summary judgment to ensure that the motion is properly supported by evidence.

A motion for summary judgment may be supported by affidavits, but affidavits are not required. See Fed.R.Civ.P. 56(c)(2); Fed.R.Civ.P. 56(a)(A party claiming relieve may move with or without supporting affidavits . . .")(emphasis added). An affidavit offered in support of or in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed.R.Civ.P. 56(e)(1). The party opposing a properly supported motion for summary judgment, "may not rely merely on allegations or denials" contained in his or her own pleading, but must "set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2). In determining whether to grant a movant's request for summary judgment, the Court must view the facts in the light most favorable to the party opposing summary judgment.[3]

## DISCUSSION

Defendant makes three distinct arguments in support of the Second Motion for Summary Judgment: first, none of the debt under the New Note is attributable to fraud because any debt owing under the Old Note attributable to fraud was refinanced by the First Mortgage Loans; second, in any event, after the First Mortgage Loans were made the New Note novated the Old Note thereby extinguishing any then remaining debt under the Old Note attributable to fraud; and third, the obligations under the First Mortgage Loans were extinguished when LANB accepted

---

[3] *Harris v. Beneficial Oklahoma, Inc., (In re Harris),* 209 B.R. 990, 995 (10th Cir. BAP 2007)("When applying this standard, we are instructed to 'examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.' "); *Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793, 796 (quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990)(internal quotation marks omitted); *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994)(stating that the court must "view all facts and any reasonable inferences that might be drawn from them in the light most favorable to the nonmoving party . . .").

collateral for the Second Mortgage Loans that enhanced its collateral position and fully protected payment of the Second Mortgage Loans. The Court will address each of these arguments.

1. <u>The Evidence Does Not Establish That the First Mortgage Loans Reduced the Principal Balance of the Old Note in the Full Amount of Any Fraud Liability.</u>

Mr. Martinez contends that the amount of any liability arising from fraud was finally determined and resolved by agreement in the aggregate amount of the First Mortgage Loans. He asserts 1) that LANB determined the amount of debt procured by fraud to be $415,000.00, which was the amount LANB identified as over-advances under the Old Note resulting from fraudulent Certificates; 2) that he and his Son borrowed money individually from LANB in that amount, secured by junior mortgages against their homes (the First Mortgage Loans); 3) that LANB applied the $415,000.00 proceeds of the First Mortgage Loans to reduce the principal balance of the Old Note in the full amount of any fraud liability. LANB responds that the aggregate amount of the over-advances, calculated by LANB at approximately $415,000.00, are not the only damages attributable to the fraud. LANB asserts that TDI's failure to satisfy obligations to make pay downs of the principal balance owed under the Old Note, which pay down obligations were not discovered by LANB or satisfied by TDI because fraudulent Certificates overstated the amount of eligible accounts receivable, is an additional measure of damages. The Court agrees that the aggregate amount of the over-advances are not the only damages attributable to the alleged fraud.

Defendant testified that it was his understanding that by pledging their homes to LANB as additional collateral it would "tak[e] care of any errors about TDI's accounts receivable. *Martinez Depo. p.95-96.* However, Defendant has not pointed to any agreement on the part of LANB to fix its fraud claim at $415,000, or settle its fraud claim for that amount, or limit its claim for damages arising from fraud to the amount of over-advances under the Old Note.

-11-

Recoverable damages flowing from the alleged fraud could have exceeded the amount of the over-advances if there were required principal reductions not made under the Old Note because they were concealed by fraudulent Certificates.[4]  The facts before the Court do not establish whether or to what extent LANB suffered such damages.  The following example, provided for illustrative purposes only, shows how a false certificate could both result in an over-advance and conceal a required loan pay down (assuming the maximum principal balance of a line of credit is the lesser of $1 million or 80% of eligible receivables):[5]

| Credit Line | $1,000,000 |
|---|---|
| Credit Line Balance | $300,000 |
| Eligible A/R Per False Certificate | $500,000 |
| Actual Eligible A/R | $200,000 |
| Room on line of credit based on false certificate (80% of $500,000 = $400,000 less outstanding balance of $300,000) | $100,000 |
| Required pay down based on accurate certificate ($300,000 loan balance less $160,000 permitted maximum loan balance [80% of 200,000]) | $140,000 |
| Possible Damages | $400,000 (maximum loan balance based on false certificate)<br>-$300,000 (loan balance)<br>**$100,000 (over advance based on false Certificate)**<br><br>plus<br><br>$300,000 (loan balance)<br>-$160,000 (actual maximum allowed loan balance)<br>**$140,000  (required pay down based on accurate Certificate)** |

---

[4] The Court is not deciding whether LANB may recover damages in the amounts, if any, TDI would have been obligated to pay to reduce the principal balance under the Old Note had the Certificates been accurate regardless of whether such amounts in fact never would have been paid because of the borrower's and guarantor's financial condition.  That issue has not been briefed by the parties, and it is not necessary to decide the issue to rule on the pending motion for summary judgment.  Further, the Court is not deciding the amount of over-advances under the Old Note.

[5] The amounts set forth in the illustration are arbitrary amounts that bear no relationship to what actually transpired.

Although Mr. Martinez provided evidence that payments in excess of $165,000.00 have been paid and applied to the New Note, there is no evidence regarding the amount of the New Note arising from false Certificates as a result of required principal pay downs not having been made under the Old Note, nor is there evidence now before the Court as to whether or to what extent such payments were or should have been applied to the portion, if any, of the New Note arising from the alleged fraud.

To prevail on its nondischargeablity claim as to the New Note, LANB must prove what portion of the outstanding balance of the New Note, if any, arises out of the portion of the Old Note tainted by fraud, and that such tainted debt was not paid.

2. <u>Any Debt Under the New Note Arising From Fraud Does Did Not Lose Its Non-Dischargeable Character Even if There Was a Novation</u>

Defendant asserts that no debt under the New Note arises out of any fraud-tainted debt under the Old Note because any and all debt under the Old Note attributable to fraud was paid in full by the First Mortgage Loans. The Court agrees that if any and all debt under the Old Note attributable to fraud was paid in full by the First Mortgage Notes then no debt under the New Note would arise out of any fraud-tainted debt under the Old Note. All of the fraud-tainted debt would then be payable under the First Mortgage Loans. However, the Court finds that the evidence does not establish that the amount of debt under the Old Note attributable to fraud was limited to the aggregate amount of the First Mortgage Loans.

-13-

Under 11 U.S.C. § 523(a)(2)(A),[6] a debt to a creditor under an agreement that settles or refinances a debt to that creditor attributable to fraud is nondischargeable if the debt that was settled or refinanced would have been nondischargeable, regardless of whether there was a novation extinguishing the tainted debt, unless the creditor specifically agreed to release any claims for fraud in connection with the settlement or refinance. *See Archer v. Warner*, 538 U.S. 314, 123 S.Ct. 1462 (2003) (involving a settlement); *Ramey v. Barton* (*In re Barton*), 321 B.R. 869, 874 (Bankr.N.D.Ohio 2004)(rejecting the "position that the execution of a subsequent agreement can substitute an otherwise nondischargeable debt for a dischargeable debt."); *Fireman's Fund Insurance Company v. Covino*, 12 B.R. 876, 877 (Bankr.M.D.Fla.1981)(debt held to be non-dischargeable as arising from debtor's embezzlement even though the nature of the debt was converted from tort to contract); *Merrill Lynch Business Financial Services, Inc. v. Kim(In re Kim)*, 125 B.R. 594 (debt was non-dischargeable where the underlying loan was based on fraud even though the lender entered into a subsequent agreement with debtor.)

In *Archer*, the parties settled a lawsuit under which the Warners would pay the Archers $300,000 and Archers would release its claims against the Warners except for claims arising under the settlement agreement. The Warners paid the Archers $200,000 and executed a promissory note for $100,000. The Archers executed the release. The lawsuit was dismissed with prejudice. The Warners failed to make any payments under the note, and filed a bankruptcy case. 538 U.S. at 317-18, 123 S.Ct. at 1465. The Archers objected under 11 U.S.C. §

---

[6] Section 523(a)(2)(A) of the Bankruptcy Code provides:
   (a) A discharge under section 727, 1141, 1228 (a), 1228 (b), or 1328 (b) of this title does not discharge an individual debtor from any debt—
       (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
           (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
11 U.S.C. §523(a)(2)(A).

-14-

523(a)(2)(A) to the dischargeability of its claim for $100,000 on the ground that the debt the parties had settled was procured by fraud. The Supreme Court determined: "[t]he dischargeability provision applies to all debts that 'aris[e] out of' fraud. A debt embodied in the settlement of a fraud case "arises" . . . "out of" the underlying fraud . . . ." 538 U.S. at 321, 123 S.Ct. at 1466. The Court concluded "that the Archers' settlement agreement and releases may have worked a kind of novation, but that fact does not bar the Archers from showing that the settlement debt arose out of 'false pretenses, a false representation, or actual fraud,' and consequently is nondischargeable [under] 11 U.S.C. § 523(a)(2)(A)." *Id.*

Defendant argues that *Archer* is distinguishable on its facts. In *Archer* there was a clear and direct causal link between the fraud claim and the nondischargeable settlement agreement because the settlement was expressly entered into to settle the fraud claim. Defendant claims that in this case there is no link between any fraud and the remaining indebtedness under the New Note. Defendant asserts that the First Mortgage Loans were intended to and did pay the entire portion of the Old Note attributable to any fraud, resulting in none of the remaining debt under the Old Note being tainted by fraud. Defendant argues that when the remaining debt under the Old Note subsequently was consolidated into the New Note together with other debt, no portion of the New Note could be attributable to any fraud. The Court disagrees.

The facts before the Court do establish a link between the alleged fraud and the remaining indebtedness under the New Note. As discussed above, the facts before the Court do not establish the premise upon which Defendant bases his argument, that the First Mortgage Loans were intended to and did pay the entire portion of the Old Note attributable to any fraud. The First Mortgage Loans paid down the Old Note in the amount of the over-advances estimated by LANB has having been made based on false Certificates. The First Mortgage Loans did not

-15-

pay down the Old Note in the amount of any required principal reductions of the Old Note concealed and not made as a result of false Certificates, which is an additional measure of damages sought by LANB on its fraud claim.

The New Note was made pursuant to the Workout Agreement, and was a consolidation of the debt then owing under the Old Note, including any debt tainted by fraud, and other debt. The Workout Agreement expressly characterizes the New Note as a "refinance" of the notes it consolidated, including the Old Note. *See Defendant's Ex. 29-3*. The Workout Agreement sets forth a negotiated arrangement for TDI to pay the debt it owed to LANB, including the debt evidenced by the Old Note, whereby TDI would have an opportunity to remain in business. *Id.* To the extent the debt evidenced by the New Note is attributable to the portion of the Old Note not paid down as a result of fraudulent Certificates, the debt under the new Note is a debt arising out of the fraud which does not lose its non-dischargeable character as a result of the workout and debt consolidation.

3. The evidence does not establish that any debt under
   the Old Note was novated by the New Note.

The Court further finds that the evidence does not establish that the New Note constituted a novation that extinguished any debt under the Old Note attributable to fraud. A "[n]ovation is the substitution of a new debt for an existing debt which is thereby extinguished in a novation." *In re Jackson*, 358 B.R. 412, 420 (Bankr. D. Kan 2007) "The controlling element is the intention of the parties, and absent a clear and definite intention on the part of all concerned to extinguish the old obligation by substituting a new one , there is no novation." *Id*. The burden of proof is on the party asserting novation. *In re Roberts*, 54 BR 765, 769 (Bankr.D.N.D.1985)("Novation is a question of fact with the burden of proof resting on the party so claiming"); *In re Livingston*,

-16-

1992 WL 12004360 *4 (Bankr.S.D.Ga 1992)(" The burden of proof is on the party alleging novation to establish novation by a preponderance of the evidence.").

Defendant asserts that the fact that New Note consolidated the Old Note with two other notes and had materially different terms from the Old Note, including a significant increase in the principal amount, a fixed term with fixed payments, and an increased interest rate, establishes that the New Note novated the debt under the Old Note. The Court disagrees.

The evidence before the Court in connection with the Second Motion for Summary Judgment does not establish that LANB intended that the New Note would extinguish the obligations under the Old Note. The Workout Agreement pursuant to which the New Note was executed refers to the New Note as a refinance of the Old Note and other loans. The Old Note is stamped "Paid off by Renewal, 4/2/07." LANB's Item History Report for the Old Note provides that the Old Note was "Paid off by Renewal." Use of the term "renewal" is consistent with an intent on the part of LANB that the New Note did not extinguish the obligation under the Old Note but instead renewed and modified the obligation to repay that debt.

4. The Evidence Does Not Establish That Any Debt Under The First Mortgage Loans Attributable to Fraud Has Been Paid in Full

The Defendant asserts that all debt attributable to the over-advances has been paid in full reasoning that 1) the First Mortgage Loans represented the amount of over-advances under the Old Note allegedly tainted by fraud; 2) the proceeds of the Second Mortgage Loans paid the First Mortgage Loans and other debt; 3) LANB took new mortgages as collateral for the Second Mortgage Loans, based on an appraisal determining that the value of the collateral fully supported the Second Mortgage Loans; 4) by accepting such collateral to enhance its position, LANB took remedial action to fully protect itself for all over-advances attributable to the

-17-

allegedly fraudulent Certificates; and 5) therefore, the Second Mortgage Loans extinguished LANB's claim for fraud as to that debt. The Court disagrees with Defendant's conclusion.

Even if the Second Mortgage Loans better collateralized the obligations under the First Mortgage Loans, paid off the First Mortgage Loans, and consolidated other debt owing to LANB with the debt owing under the First Mortgage Loans, that is not by itself sufficient to establish that no debt owing under the Second Mortgage Loans arises out of fraud. The evidence does not establish that LANB agreed to extinguish its fraud claim in exchange for new collateral in connection with the refinancings.

The proceeds of the Second Barranca de Oro Mortgage Loan reduced the balance of the First Barranca de Oro Loan to zero, paid down the First Snow Blossom Mortgage Loan, and paid off or paid down various other loans. To the extent the proceeds of the Second Barranca de Oro Mortgage Loan were applied to the First Mortgage Loans (which reprsented debt arising from over-advances under the Old Note) the debt represented by the Second Barranca de Oro Mortgage Loan arises from the alleged fraud that resulted in over-advances under the Old Note. Therefore, under *Archer v. Warner,* the Second Barranca de Oro Mortgage Loan retains the same non-dischargeable character as the debt it refinanced. The proceeds of the Second Snow Blossom Mortgage Loan then reduced the balance of the First Snow Blossom Mortgage Loan to zero and paid off or paid down various other loans. Likewise, to the extent the proceeds of the Second Snow Blossom Mortgage Loan were applied to the First Snow Blossom Mortgage Loan, the debt owing under the Second Snow Blossom Mortgage Loan arises from the alleged fraud and retains the same non-dischargeable character as the debt it refinanced.

The proceeds of the sale of the property securing the Second Barranca de Oro Loan paid down that loan, leaving an unpaid balance on the loan as of February 2009 in the amount of

$84,909.62. As of February 2009, the unpaid principal balance under the Second Snow Blossom Mortgage Loan was $70,687.20. The evidence before the Court does not establish whether or to what extent funds applied in payment of the Second Mortgage Loans should be applied to the portion of those loans arising from the alleged fraud.

## CONCLUSION

The Court finds 1) the evidence does not establish that LANB's claim for damages based on fraud is limited to the amount of the over-advances under the Old Note that were refinanced by the First Mortgage Loans; 2) that debt owing under the New Note may be traceable to unpaid debt under the Old Note attributable to fraud; and 3) that the evidence does not establish that any obligations under the First Mortgage Loans tainted by the alleged fraud were satisfied in full and extinguished when the Second Mortgage Loans were made. Accordingly, the Second Motion for Summary Judgment should be denied. The Court will enter an order consistent with this opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Entered on Docket Date: July 30, 2010

Copies to:
James Jurgens
Jurgens & With, P.A.
100 La Salle Cir Ste A
Santa Fe, NM 87505-6976
*Attorneys for LANB*

William F. Davis
Anne D. Goodman
William F. Davis & Assoc., P.C.
6709 Academy NE, Suite A
Albuquerque, NM 87109
*Attorneys for Ricardo P. Martinez*